[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT CT Page 9816
The plaintiff, Carmelita Quinones, a minor, through her mother and next friend, Luz Cancel, filed a three-count action on November 21, 1989 against the defendant, New Britain Housing Authority, seeking to recover for injuries allegedly sustained as the result of a dog bite received by the plaintiff on the defendant's premises. In the first count, the plaintiff seeks to hold the defendant strictly liable as a "keeper" of the dog pursuant to General Statutes22-357, sometimes referred to as the "dog bite statute." In the second count, the plaintiff alleges that her injuries were caused by the negligence and carelessness of the defendant. In the third count, the plaintiff alleges that her injuries were caused by the reckless and wanton misconduct of the defendant.
On December 20, 1991, the defendant filed a revised answer and special defenses in which it alleged that each count of the plaintiff's complaint is barred by the doctrine of governmental immunity. On January 6, 1992, the plaintiff filed a reply to the special defense, thereby closing the pleadings.
On March 17, 1992, the plaintiff filed a motion for summary judgment "on the defendant's Special Defenses [sic]," accompanied by a memorandum of law in support of her motion. On March 31, 1992, the defendant filed a motion for summary judgment on all counts of the plaintiff's complaint, accompanied by a memorandum of law in support of its motion and in opposition to the plaintiff's motion, affidavits and other documentation. On May 19, 1992, the plaintiff filed a memorandum in opposition to the defendant's motion, but did not file a counter-affidavit. On July 17, 1992, the defendant filed a reply memorandum in support of its motion and in opposition to the plaintiff's motion.
The plaintiff moves for summary judgment "on defendant's Special Defenses [sic] dated December 18, 1991." Practice Book 379 permits summary judgments as to complaints, counterclaims or cross-complaints, but makes no provisions for summary judgments on special defenses. See Ferryman v. Groton, 4 CTLR 213, 218 (June 11, 1991, Hurley, J.); Conlam, Inc. v. Heritage Kitchens, Ltd., 6 CTLR 406 (May 13, 1992, CT Page 9817 Flynn, J.). "Judgments are rendered on complaints or on counterclaims, but there is no provision under Connecticut practice for a `judgment' to be entered on a special defense." H.R. Hillary Co. v. Crystal Mall Associates,2 CSCR 324 (February 11, 1987, Koletsky, J.); see also Espowood v. Springfield Terminal Railway Co., 7 CTLR, 147, 148-49 (July 28, 1992, Maiocco, J.); Carothers v. Capozziello, 3 Conn. L. Rptr. 341, 342 (March 14, 1991, Hennessey, J.); Rogers v. Daley Development Co., Inc.,3 Conn. L. Rptr. 76, 77 (December 19, 1990, Pickett, J.). But see Peoples Bank v. BMI Industries, Inc., 3 CSCR 450
(April 26, 1988, Hennessey, J.).
In short, irrespective of the merits of defendant's special defenses, we conclude that plaintiff is not entitled to summary judgment.
 II.
The defendant moves for summary judgment as to all three counts of the plaintiff's complaint. The defendant contends that with respect to the first and second counts of the complaint, the defendant was engaged in the performance of a discretionary function in relation to the plaintiff's allegations and thus is governmentally immune from suit. The defendant argues further with respect to the first count that under the allegations of the plaintiff's complaint, it could not, as a matter of law, be considered a "keeper" of the dog and thus is not liable under General Statutes 22-357. Finally, the defendant claims that the allegations of the second and third counts of the complaint do not give rise to a duty on the part of defendant and that, in any event, the defendant "was doing all it was legally authorized to do to remove the dog." (Defendant's Memorandum in Support of Motion for Summary Judgment, p. 4).
General Statutes 8-44(a) provides that a housing authority has the power to sue and "be sued."
 General Statutes 8-67 provides: Any person injured in person or property within boundaries of property owned or controlled by an authority, for which injury such authority is or may be liable, may bring an action within two years after the cause of action therefor arose to recover damages from CT Page 9818 such authority, provided written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the chairman or the secretary of the authority within six months after the cause of action therefor arose.
General Statutes 8-44(d) further provides that a housing authority has the power "to insure or provide for the insurance of any real or personal property or operations of the authority for any risks or hazards." In Parillo v. The Housing Authority of the City of New Haven, 16 Conn. Sup. 106,107 (Super.Ct. 1949), the court sustained the plaintiff's demurrer to a special defense asserted by the defendant housing authority in which it alleged that the lease to the plaintiff tenant contained a provision absolving the defendant from liability for damages sustained by the tenant or other persons due to lack of repair, finding nothing in the legislation under which the housing authority was created to indicate an intent to exempt the authority for its own negligence or to authorize it to contract for such exemption.
It would appear that the provisions in the General Statutes which expressly give housing authorities the power to sue and be sued and to procure insurance, and which provide for the manner in which actions by persons injured on property owned or controlled by an authority may be brought, evidence a legislative intent that housing authorities not be granted the same governmental immunity given to municipalities or other "political subdivisions" of the state. This view is buttressed further by the failure of the Legislature to expressly designate municipal housing authorities "political subdivision[s] of the state," in General Statutes 8-44 as it did the Connecticut Housing Authority and the Connecticut Housing Finance Authority. (Cf: General Statutes 8-44 with General Statutes 9-119zz and 8-244.) We conclude that the defendant housing authority in this case is not immune from suit under either the common law or General Statutes 52-557n, and that the defendant's motion for summary judgment as to the first two counts of the complaint on this ground should be denied.
-B-
CT Page 9819 [i]f any dog does any damage to either the body or property of any person, the owner or keeper . . . shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time of such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog.
General Statutes 22-327 defines a "keeper" as "any person, other than the owner, harboring or having in his possession any dog." "To harbor a dog is to afford lodging, shelter or refuge to it." Malone v. Steinberg, 138 Conn. 718,722, 89 A.2d 213 (1992); Webster's Third New International Dictionary. `[P]ossession cannot be fairly construed as anything short of the exercise of dominion and control [over the dog] . . . .' Hancock v. Finch, 126 Conn. 121,123, 9 A.2d 811 (1939)." In Falby v. Zarembski,36 Conn. Sup. 156, 157-58, 414 A.2d 1187 (Super.Ct. 1980), the court found that the landlords did "give refuge to" a dog. Where the premises were owned by the landlords, and the "yard where the dog was kept was not turned over to the tenants but was at most, available to them for use in common with the owners," and that under those circumstances, the landlords were keepers of the dog within the meaning of the dog bite statute. Id., see Buturla v. St. Onge, 9 Conn. App. 495,498, 519 A.2d 1235 (1987), cert. denied, 203 Conn. 803,522 A.2d 294 (1987).
In this case, the plaintiff has alleged that the defendant was the keeper of the dog, and further that the dog was permitted to freely wander and roam about the common area of the defendant's property, and did so with the knowledge and acquiescence of the defendants. We conclude that the plaintiff has alleged facts sufficient to state a cause of action against the defendant under the dog bite statute because, under the facts alleged, the plaintiff could prove that the defendant either gave refuge to or otherwise exercised some degree of control over the dog such that the defendant could be found to be a keeper or harborer of the dog pursuant to the statute. Since, the defendant has not submitted any evidence which challenges the truth of the material allegations of fact in the complaint, it is not entitled to summary judgment as to the first count of the CT Page 9820 complaint on the ground that it cannot, as a matter of law, be considered a "keeper" of its tenant's dog.
-C-
The defendant argues that because it had no legal authority to remove the dog from the premises or otherwise take action against the dog, it owed no duty to the plaintiff to do so. The defendant further asserts that even if the court was to find that the defendant did have a duty, the evidence it has presented in support of its motion removes any genuine issue of material fact as to whether "there was nothing that the Housing Authority could do that it was not doing when the alleged incident occurred."
In the second and third counts of her complaint, the plaintiff alleges that the defendant was negligent or reckless in a number of ways, including its failure to remove or secure the dog, failure to evict the dog's owner, and failure to keep the common areas of the premises in a safe condition in violation of General Statutes 47a-7(3). The defendant has not cited any authority in support of its contention that because it was not the owner of the dog, it had no authority and thus no duty, to attempt to remove the dog from the common areas of its premises or to otherwise take action against the dog.
As the operator of the housing project and as the plaintiff's alleged landlord, the defendant owed its tenants, including the plaintiff victim, its premises safe. See General Statutes 47a-7(3). It would appear that the question of whether the defendant breached its duty by failing to remove or secure the dog, evict the dog's owner, or remedy the situation in some other way, is a question of fact, as is the question as to whether the defendant had done all that it possibly could do to remedy the situation.
Issues of negligence are ordinarily not susceptible to summary adjudication but should be resolved by trial in the ordinary manner. Fogarty v. Rashaw, 193 Conn. 442, 446,476 A.2d 582 (1984). The affidavits and evidence submitted by the defendant merely show that it had attempted to evict the dog's owner that dogs were not allowed under the terms of the lease, that it had later instituted a policy allowing dogs to be kept by tenants if they were registered with the housing CT Page 9821 authority, and that the dog had, in a one year period, bitten a number of people and killed a smaller dog while it was apparently loose on the defendant's premises outside of the dog owner's dwelling. These assertions do not necessarily challenge the truth of all of the allegations of fact contained in the plaintiff's complaint regarding the defendant's alleged negligent or reckless failure to keep common areas safe. See Plouffe v. New York, N.H. and H.R. Co., supra. Since we find that genuine issues of material fact remain in dispute as to whether the defendant breached a duty to the plaintiff to keep the common areas of the premises in safe condition or whether the defendant had done all that it could do to remedy the situation, the defendant's motion for summary judgment as to the second and third counts of the complaint on the grounds that it neither owed nor breached a duty cannot be granted.
CONCLUSION
Plaintiff's motion for summary judgment as to the defendant's special defense is denied. Defendant's motion for summary judgment as to the complaint is denied.
Wagner, J.